ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

In re:                                            :

PRADEEP THAKUR and JENNIN C. THAKUR,              :

        Debtors.                                  :

------------------------------------------------------

JIL MAZER-MARINO, as Chapter 7 Trustee of         :
the Estate of PRADEEP THAKUR and                  :
JENNIN C. THAKUR,                                 :
                                                  :
                                                  :
        Plaintiff,                                :
                                                  :
        v.                                        :

S.J.P.B., INC., HSBC BANK USA, NATIONAL           :
ASSOCIATION AS TRUSTEE FOR NOMURA                 :
ASSET ACCEPTANCE CORPORATION                      :
MORTGAGE PASS-THROUGH CERTIFICATES,:
SERIES 2006-AF2, DAVID A. CANTOR, and             :
BARON ASSOCIATES,                                 :
                                                  :
        Defendants.                               :

------------------------------------------------------

DAVID A. CANTOR and BARON ASSOCIATES, :
                                                  :
        Appellants,                               :
                                                  :
        v.                                        :

JIL MAZER-MARINO, as Chapter 7 Trustee of         :
the Estate of PRADEEP THAKUR and                  :
JENNIN C. THAKUR,                                 :
                                                  :
        Appellee.                                 :

------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED:  9/30/13

**OPINION AND ORDER**
12 Civ. 8490 (ER)

Ramos, D.J.:

    Appellants David Cantor ("Cantor") and Baron Associates ("Baron") (collectively

"Appellants") appeal from the order granting the trustee's motion for summary judgment, entered on September 25, 2012 by United States Bankruptcy Judge Robert D. Drain, and the underlying decision rendered on the record on August 30, 2012, which avoided a mortgage lien conveyed by S.J.P.B., Inc. to Appellants and preserved such lien for the benefit of the debtors' estate pursuant to sections 544, 550 and 551 of the Bankruptcy Code, 11 U.S.C. §§ 544, 550-51. Bankr. Docs. 38, 40.[1]  On appeal, Appellants do not challenge the bankruptcy court's finding that the mortgage is avoidable and recoverable by the bankruptcy trustee as the result of a fraudulent conveyance by the debtors to S.J.P.B., Inc.  The sole issue on appeal is whether the bankruptcy court erred in finding that Appellants were not good faith transferees of the mortgage pursuant to section 550(b) of the Bankruptcy Code, 11 U.S.C. § 550(b).  For the reasons set forth below, the judgment of the bankruptcy court is AFFIRMED.

## I.  Background

### a.  Statement of Facts

Appellant Baron is a New York investment partnership which provides loans through Levites Realty.  Trustee's Supplemental Appendix ("T. Appx."), Ex. 1, Trustee Declaration ("Trustee Decl.") ¶¶ 11-12, Doc. 14.  Barry Levites, who passed away in 2010, was a principal of Levites Realty.  *Id.* ¶ 13.  Starting in 1998, Levites Realty and its affiliates made "hard money" mortgage loans for amounts of up to $500,000.00.  *Id.* ¶ 15.  The mortgage loans were "value loans," which means that a brokerage firm would approach Barry Levites with a loan request and he would perform due diligence on the "loan to value" ratio.  *Id.* ¶ 16.  Barry Levites and his affiliated companies generally made loans secured by first mortgages on real property, however, approximately 25% of their loans were secured by subordinate mortgages.  *Id.* ¶ 17.

---

[1] "Bankr. Doc." refers to documents filed in the Bankruptcy Court for the Southern District of New York under docket number 11-08215 (RDD).

Appellant Cantor has been a private lender since 1983.  *Id.* ¶ 18.  In 2007, he was issuing private loans primarily on a "loan to value" basis.  *Id.* ¶ 19.  Cantor and Barry Levites were friends and had a partnership relationship through which they provided loans.  *Id.* ¶ 20.

Since approximately 1996 to the present, Richard Roth ("Roth") has been an independent legal advisor and contractor for Levites Realty.  *Id.* ¶ 21.  As independent legal counsel, Roth assisted Levites Realty in making "hard money" loans for real property, and his duties included "ordering title" and drafting loan documents.  *Id.* ¶ 22.  From 1998 to 2008, Roth worked on approximately sixty deals with Cantor and Barry Levites as lenders.  *Id.* ¶ 23.

### i.   The Appellants' Acquisition of the Property

In 1998, Pradeep Thakur, together with his mother, Savitri Thakur, and his sister, Nillo Thakur, purchased property located at 3 Herald Court, Valley Cottage, New York (the "Property").  *Id.* ¶ 26.  By indenture dated May 25, 2000, the Property was transferred from Pradeep, Savitri and Nillo Thakur to the eventual Debtors, Pradeep Thakur and Jennin C. Thakur ("Debtors").  *Id.* ¶ 27.  The recording instrument identification number for this deed is 2000-00027731.  *Id.*; *see also id.*, Tab J (2000 Transfer Deed).  The Debtors used the Property as their residence.

### ii.   Events Leading to the Appellants' Loan

On May 11, 2005, the Debtors formed S.J.P.B., Inc. ("SJPB"), with each Debtor owning a 50% interest in the entity.  Trustee Decl. ¶¶ 31-32.  Afterward, SJPB acquired a business operating under the name Jenny's Gourmet Deli (the "Deli").  *Id.* ¶ 33.  However, the Deli was losing business and the Debtors decided to remodel the Deli in an effort to operate profitably.  *Id.* ¶¶ 34-35.

In 2005 or 2006, Pradeep Thakur sought to refinance the existing mortgage on the

Property to obtain funds for the Deli.  *Id*. ¶ 36.  On April 26, 2006, the Debtors borrowed over $547,000 from Union Federal Savings Bank.  This loan was evidenced by two promissory notes (the "HSBC Notes") and secured by mortgages (the "HSBC Mortgages") on the Property.  *Id*. ¶ 37.  HSBC is the successor in interest to the Union Federal Savings Bank's interest in the notes. HSBC waited three years to record the HSBC Mortgages with the County Clerk for Rockland County.  *Id*. ¶¶ 38-39.

In 2007, Pradeep Thakur asked an attorney, Alan McGeorge ("McGeorge"), for assistance in obtaining financing because the Debtors were deeply in debt, had been unable to pay the HSBC Notes for almost six months and had started to receive letters from the mortgage lender.  *Id*. ¶ 40.  On October 19, 2007, McGeorge contacted Roth via telephone and informed him that the Debtors needed a loan (the "October 19 Call").  *Id*. ¶ 45.  McGeorge further advised Roth that the Debtors had undertaken a high-end restaurant renovation, had gone over budget, "maxed out" their credit cards and needed relief.  *Id*. ¶ 47.  In response, Roth told McGeorge that a loan could not be made unless the home collateralizing the loan was owned by a corporation. McGeorge then said that he had just arranged for title to be conveyed to a corporation. McGeorge also told Roth that he was aware that "hard money" lenders did not like to make loans for primary residences.  *Id*. ¶ 48.

By deed dated that same day, October 19, the Debtors transferred the Property to SJPB. *Id*. ¶ 28.  The recording instrument identification number for this deed is 2007-00056376.  *Id*.; *see also id*., Tab K (2007 Transfer Deed).  The Real Property Transfer Report recorded with the deed states that the Property was conveyed in consideration of $450,000.00.  Trustee Decl. ¶ 29. However, the Debtors admit that they transferred the Property to SJPB without consideration and they continued to reside at the Property after the transfer to SJPB.  *Id*. ¶¶ 29-30.

One week later, on October 26, at Roth's request, McGeorge sent him an email

discussing the proposed mortgage loan for the Property (the "October 26 Email").  *Id*. ¶ 50.  The

October 26 Email states:

> S.J.P.B., Inc. d/b/a Jenny's Gourmet Deli ("SJPB") operates a deli from leased
> premises located at 120 West Ramapo Road (a/k/a Route 202) in Garnerville, NY.
> It is owned by Pradeep Thakur, who resides with his wife Jennin at 3 Herald
> Court, Valley Cottage, NY.  *Essentially, Pradeep overspent on leasehold
> improvements when he purchased the assets of a former deli at that location, and
> financed the improvements with credit cards, and now he is falling behind.*
> Would your lender be interested in making a loan to SJPB in an a[]mount
> sufficient to yield $150,000.00 net proceeds, to be secured by a UCC against the
> deli assets and mortgage against [the Debtor]'s residence?  The house is a one-
> family, 4 bedroom 2 ½ bath colonial with a two-car attached garage on a ½ acre
> lot.  According to the Town of Clarkstown receiver of taxes website information,
> the total assessed value is $123,900, which, when divided by the residential
> assessment ratio of 23.86 and then multiplied by 100, indicates an assessed fair
> market value of $519,279.10.  *According to the Rockland County Clerk's website
> information, SJPB has approximately $27,000.00 of state tax warrants against it,
> and [Debtors] have one credit card judgment and two pending credit card actions
> against them.  Otherwise the only recorded lien against the house is an old CEMA
> [, Consolidation, Extension and Modification Agreement,] dated 6/22/2000 that
> apparently was refinanced but the satisfaction was never recorded.*  Accordingly,
> assuming payoff of the credit card judgment, your lender would have a first
> position mortgage against the residence.

*Id*., Tab U (emphasis supplied).  The Court notes that the October 26 Email does not discuss the

HSBC Mortgages.  Trustee Decl. ¶ 55.

After receipt of the October 26 Email, Roth wrote a memorandum, dated November 12,

to Barry Levites inquiring whether he was interested in making the loan (the "Loan

Memorandum").  *Id*. ¶ 56.  There are at least two versions of the Loan Memorandum.  *Id*. ¶ 57.

The subject line for both versions is "Subordinate Mortgage Request, 3 Herald Ct., Valley

Cottage, NY" and both indicate that the Property is owned by a corporation and occupied by the

Debtors, who are the principals of the corporation.  Furthermore, both versions indicate that the

loan will be a "[f]irst [m]ortgage on the house" and that "Mr. Thakur overspent on his credit

cards on his leasehold improvements when he bought the deli."  *Id.*, Tab V.[2]

The Appellants ultimately agreed to loan SJPB $160,000.00.  Trustee Decl. ¶ 80.  The Appellants' loan is evidenced by a loan agreement between SJPB as the borrower and Appellants as the lenders.  *Id.* ¶ 81.  As security for the loan, SJPB executed a Collateral Security Mortgage Note on the Property, dated December 7, 2007 (the "Mortgage Note").  The loan closed that same day.  *Id.* ¶¶ 83, 85.

### iii.  Due Diligence on the Loan

Roth was charged with performing diligence in connection with Appellants' loan.  *Id.* ¶ 64.  Prior to the closing, Sky Abstract, a title closer, had produced a title report ("Title Report") for McGeorge.  Roth reviewed the Title Report, which indicated that:  (1) the owner of the Property was SJPB, which received the Property from Debtors via deed with instrument identification number 2007-00056376; (2) there were no outstanding mortgages against the Property; (3) there were no judgments, federal tax liens or minor liens against the Debtors; and (4) SJPB had three warrants issued by the Commissioner of Labor and State Tax Commission for amounts that totaled approximately $2,700.  T. Appx., Ex. 4, Tab D ("Title Report").

The Title Report also includes a section on "additional matters which will appear in our policy as exceptions from coverage unless disposed of to the Company's satisfaction prior to the closing or delivery of the policy."  Title Report at 3.  Various items in this section, such as tax liens, sewer assessments, and water rates include handwritten notations stating "omit" next to their description.  *Id.* at 3-7.  According to Roth, the "omit" notation indicated that Sky Abstract was providing an "express omission," which meant that it had independently analyzed the item and "did not come away with an issue."  T. Appx., Ex. 4, Roth Declaration ("Roth Decl.") ¶ 28.

The Title Report contains an "omit" next to the following:

[2] The differences between the two versions are immaterial for the purposes of this Opinion and Order.

> The deed in Instrument ID #200000027731, appears to have been given for no consideration.  The circumstances regarding the conveyance must be disclosed to the [C]ompany, and additional exceptions may be raised.  If the proofs are not satisfactory to the Company, policy will except any loss or damage sustained by the insured which would not have been suffered had the grantee been a bona fide purchase for value.

Title Report at 5.  Roth interpreted this "omit" to refer to the transfer of the Property from the Debtors to SJPB.  Accordingly, he thought that the "omit" meant that Sky Abstract was "comfortable that this transfer did not create a fraudulent conveyance since the Debtors also owned SJPB."  Roth Decl. ¶ 28; *see also* T. Appx., Ex. 1, Tab G, Roth Deposition ("Roth Dep.") Tr. 81:16-22; Trustee Decl. ¶ 72.  However, the Court notes that Instrument ID #20000027731, refers to the transfer of the Property in 2000 from Pradeep, Savitir and Nillo Thakur to the Debtors, and *not* to the transfer in 2007 from the Debtors to SJPB.  In addition to the Title Report, Roth also reviewed Sky Abstract's Loan Policy of Title Insurance ("Loan Policy") prior to the closing.  Roth Decl. ¶ 28.

At the closing of Appellants' loan, Roth was given a copy of the affidavit of title executed by Pradeep Thakur and given to Sky Abstract ("Affidavit of Title.").  Trustee Decl. ¶ 71; *id*., Tab W (Affidavit of Title).  Roth admits that he did not review the Affidavit of Title either at or before the closing.  According to Roth, the Affidavit of Title was given by SJPB to Sky Abstract to induce the title insurer to insure the transaction and, "[a]s the Affidavit of Title concerns the borrower and the title insurer, [he] never relied on this document."  Roth Decl. ¶¶ 25-26.  Roth explained that as counsel for the lenders, he "was not concerned with the Affidavit of Title, but rather with the [L]oan [P]olicy to see that the marked-up [T]itle [R]eport indicated that [Appellants'] mortgage was insured in first lien position and that the title company had raised no exceptions in the [T]itle [R]eport."  *Id*. ¶ 27.  He further explained that he "[a]t all times . . . *exclusively relied upon*" the Title Report in connection with the closing of the loan to

SJPB.  *Id.* (emphasis supplied).

The Court notes that the Affidavit of Title contains various inaccuracies recognized by the parties, including, among other things:  (1) that Pradeep Thakur owns the Property when, in fact, SJPB was the record owner of the Property on the date of closing, Trustee Decl. ¶ 73; (2) that the Property was in SJPB's possession since 1988 when SJPB only came into possession in 2007, *id.* ¶ 74; (3) that Pradeep Thakur resides at the Property, yet it also says that there are presently zero tenants in possession of the Property, *id.* ¶ 75; and (4) states that "we are not in arrears on any mortgage and we have not executed any documents which would encumber the premises except those in the title abstract report."  *Id.* ¶ 79.

As part of his due diligence, Roth did not order a credit report for SJPB or the Debtors or inquire into the Debtors' financial condition.  Trustee Decl. ¶ 64.  Further, the parties dispute whether Roth reviewed the deed conveying the Property from the Debtors to SJPB at or prior to the loan's closing.  *Id.*; Roth Decl. ¶ 31.[3]  Finally, Roth did not inquire as to the source of the funds that would satisfy the Consolidation, Extension and Modification Agreement ("CEMA") mentioned in the October 26 Email.  He later testified that the disclosure of the CEMA in the email did not raise any potential red flags for him because it was not raised as a title exception by the title insurer.  Trustee Decl. ¶ 65.

### b.  Procedural History

The Debtors commenced the underlying bankruptcy proceeding on September 22, 2010, by filing a voluntary petition for relief pursuant to chapter 7 of the Bankruptcy Code.  On September 25, 2010, Jil Mazer-Marino was appointed as the chapter 7 trustee (the "Trustee").  *See* Bankr. Doc. 27.

---

[3] As discussed below in Section I(c), on August 30, 2012, Appellants conceded that Roth did not review the deed prior to the closing.

The Bankruptcy Code provides that a trustee may "avoid any transfer" by the debtor that "was made or incurred on or within 2 years before the date of the filing of the petition,"[4] where the debtor made such transfer "with actual intent to hinder, delay, or defraud" a creditor.  11 U.S.C. § 548(a).  The trustee may recover the transferred property (or its value) not only from the initial transferee, *see* 11 U.S.C. § 550(a)(1), but also from "any immediate or mediate transferee of such initial transferee," 11 U.S.C. § 550(a)(2).  However:

> The trustee may *not* recover under section [550](a)(2) . . . from . . . a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or . . . any immediate or mediate good faith transferee of such transferee.

11 U.S.C. § 550(b)(1) (emphasis added).

On January 18, 2011, the Trustee commenced the underlying adversary proceeding in bankruptcy court, alleging that the Debtors' pre-petition transfer of the Property to SJPB was a fraudulent conveyance of the Debtors' assets.  The Trustee sought to avoid and recover two mortgage liens on the Property:  (1) the mortgage lien associated with the HSBC Mortgages; and (2) Appellants' mortgage lien.  The Trustee sought to set aside the Appellants' mortgage lien on the basis that as subsequent or intermediate transferees, the Appellants accepted the mortgage without good faith under § 550(a).  Bankr. Doc. 1.  On May 17, the Trustee filed an Amended Complaint in the adversary proceeding.  *Id*. 11.  On June 20, Appellants filed an Answer to the Amended Complaint in which they asserted affirmative defenses based upon, among other things, their good faith transferee status under 11 U.S.C. § 550(b).  *Id*. 15.

On July 6, 2012, the Trustee filed a Motion for Summary Judgment against Appellants seeking to set aside the mortgage lien.  *Id*. 25-28.  Appellants filed their opposition on August 6,

---

[4] The Court notes that the mortgage loan at issue closed on December 7, 2007, Trustee Decl. ¶ 85, more than two years before the filing of the Debtors' bankruptcy petition in September 2010.  However, as the parties do not contest the timing of the transfer, and the timing was not discussed at the summary judgment hearing before Judge Drain, the timing of the transfer is not properly before this Court.

asserting that they were good faith transferees, and the Trustee filed a reply on August 24.  *Id*. 29-31, 35.  On August 30, 2012, Judge Drain held oral argument on the motion and issued his ruling from the bench.  *Id*. 40 ("Hearing Tr.").  On September 25, 2012, Judge Drain's order granting the Trustee's motion for summary judgment was entered on the docket of the adversary proceeding.  *Id*. 38.  This appeal followed.  *Id*. 39.

### c.  Bankruptcy Court's August 30 Hearing on Motion for Summary Judgment

At the outset of the August 30, 2012 bankruptcy court hearing, Judge Drain observed that it was undisputed that the transfer of the Debtors' Property to SJPB was a fraudulent conveyance.  Hearing Tr. 5:16-21, 7:4-11, 28:7-9.  Accordingly, the only issue before the court was whether Appellants, who were subsequent transferees from the initial transferee SJPB, were good faith transferees without knowledge of the voidability of the transfer.  *Id*. 7:12-19, 25:15-21.

The court noted that both parties recognized that for purposes of Bankruptcy Code section 550(b), "good faith" meant that the transferee was not on "inquiry notice," which is a "higher standard than constructive notice, but a lesser standard than actual knowledge, and should be done on an objective basis."  *Id*. 26:1-7; *see also id.* 23:1-2.  The court also noted that pursuant to section 550(b), claiming status as a good faith transferee was an affirmative defense, and the burden was on Appellants to establish their good faith and lack of knowledge of the voidability of the transfer.  *Id*. 23:10-14, 26:15-22.  The court further explained that the relevant legal authority indicated that good faith would not be established when there was knowledge of the transferor's unfavorable financial condition at the time of the transfer and when the transfer itself was to an insider.  *Id*. 27:1-5.  Finally, the court stated that the inquiry notice at issue was really that of Roth, who served as counsel for the lenders, "and his knowledge [was] imputed" to

Appellants.  *Id*. 26:10-14; *see also id*. 17:9-14

During questioning, Appellants' counsel conceded that Appellants knew "either directly or through [Roth]" or "were on inquiry notice" that SJBP "was an insider" of the Debtors or "[w]as basically owned by the [D]ebtors[.]"  *Id*. 9:4-18.  Appellants' counsel also conceded that the October 19 Call and the October 26 Email gave Roth indication that the Debtors were in "financial trouble," and conceded that McGeorge had told Roth that SJPB "had gotten the property recently."  *Id*. 17:16-25.  Then, Judge Drain observed that Roth never actually looked at the deed to verify the $450,000.00 transfer from the Debtors to SJPB and Appellants' counsel admitted that Roth had never looked at the deed.  *Id*. 18:2-12.  Appellants' counsel further explained that the majority of Roth's due diligence "concern[ed] the valuation of the property." *Id*. 19:6-8.  The court then acknowledged that there was a factual dispute as to whether Roth had read the Affidavit of Title.  *Id*. 11:13-16.

After hearing the parties' arguments, Judge Drain issued his ruling on the record.  Before discussing the substance of his decision, he clarified that he was not basing his ruling on Affidavit of Title submitted by Pradeep Thakur because it was not clear to him "either as a legal or a factual matter whether that is the type of document that would put someone like a lawyer in Mr. Roth's position on inquiry notice."  *Id*. 23:15-21.  However, Judge Drain explained:

> [T]he other facts surrounding the transaction, which are undisputed, namely the [T]itle [R]eport itself, the insurer's report, which doesn't refer to a transfer to SJ[PB], the fact that – although it's disputed whether [Appellants] through Roth insisted on there being a transfer to SJ[PB] first, it is, I think, undisputed that at a minimum Mr. Roth was under the understanding that [the Property] had been very recently transferred to SJBP, which enabled the loan to be approved . . . And when you couple that with what the undisputed communications on . . . October 19th . . . with McGeorge and October 26th email, . . . the reason for the transfer is this couple needed money because they were under financial pressure from both judgment creditors and creditors who were suing them.

*Id*. 23:22-25 – 24:1-13; *see also id*. 27:12-16 (discussing how the transfer to SJPB was made

"substantially contemporaneously" with the provision of the loan).  Moreover, the court noted that the undisputed facts established that Roth had knowledge of SJPB's unfavorable financial condition at the time of the transfer and the transfer was to an insider, "a wholly-owned entity, which apparently had no other assets besides the real property."  *Id*. 27:6-14.

Accordingly, at this point, the court determined that Roth was on inquiry notice that the transfer of the Property to SJPB was a fraudulent conveyance.  *Id*. 24:14-20.  However, Roth "doesn't say that he did due diligence on that.  He doesn't say that he determined that [SJPB] actually had the money, that they'd actually paid for it.  He didn't look at the title – the deed, which said [it] is for 400 and some thousand dollars."  *Id*. 24:21-25.  The court also observed that Appellants admittedly did not conduct any diligence other than to rely upon the Title Report, "but that [T]itle [R]eport was deficient, in that it didn't indicate any transfer to SJPB."  *Id*. 27:17-24.  Accordingly, the court held that Appellants would not prevail in establishing their defense under section 550(b)(1) and granted summary judgment to the Trustee.  *Id*. 24:25 – 28:1-5

## II.  Discussion

On appeal, Appellants do not dispute that the transfer from the Debtors to SJPB was an intentional and constructive fraudulent conveyance.  Moreover, they do not contest that the mortgage is avoidable and recoverable by the Trustee pursuant to Bankruptcy Code section 550(a).  Trustee's Opp. Mem. 3, Doc. 14; *see generally* Appellants' Reply Mem. 5 n.4, Doc. 16.  Accordingly, the sole issue on appeal is whether the bankruptcy court erred in its finding the Appellants had failed to satisfy their burden of proof and establish that they were good faith transferees pursuant to section 550(b) of the Bankruptcy Code.  Trustee's Opp. Mem. 3.

### a.  Standard of Review

This Court has jurisdiction to hear appeals from decisions of a bankruptcy court pursuant

to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . [and,] with leave of court, from other interlocutory orders and decrees . . . of bankruptcy judges." 28 U.S.C. § 158(a).

A district court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law *de novo. Overbaugh v. Household Bank, N.A. (In re Overbaugh),* 559 F.3d 125, 129 (2d Cir. 2009); *see* Fed. R. Bankr. P. 8013 (a district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree," and "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous."). A finding of fact is clearly erroneous if, after reviewing the evidence as a whole, "the reviewing court is left with the definite and firm conviction that a mistake has been committed." *In re AMR Corp.*, 490 B.R. 470, 475 (S.D.N.Y. 2013) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)) (internal quotation marks omitted). A bankruptcy court's interpretation of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the local bankruptcy rules for the United States Bankruptcy Court for the Southern District of New York are subject to *de novo* review. *In re AMR Corp.*, 490 B.R. at 475 (citing *Term Loan Holder Committee v. Ozer Group, LLC (In re Caldor Corp.),* 303 F.3d 161, 166 (2d Cir. 2002)). "Mixed questions of fact and law are subject to *de novo* review." *Babitt v. Vebeliunas* (*In re Vebeliunas*), 332 F.3d 85, 90 (2d Cir. 2003); *see Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.* (*In re Parmalat* ), 639 F.3d 572, 580 (2d Cir. 2011).

Here, the Court has under review a bankruptcy court's ruling on a motion for summary judgment. Federal Rule of Civil Procedure 56 is applicable to these proceedings pursuant to Federal Rules of Bankruptcy Procedure 7056. Fed. R. Bankr. P. 7056. Pursuant to Rule 56,

summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free School Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the relevant law. *Id.* The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 322-23).

The burden then shifts to the party opposing summary judgment to present evidence that is sufficient to satisfy every element of the claim and "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. 317 at 324 (quotation marks omitted). "Summary judgment is properly granted when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (quoting *Celotex Corp.*, 477 U.S. at 322).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya*, Inc., 653 F.3d 156, 164 (2d Cir.

2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving part may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  A motion for summary judgment cannot be defeated on the basis of mere denials or unsupported alternative explanations of facts.  *Senno*, 812 F. Supp. 2d at 467.  The non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'" *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), "[she] must set forth significant, probative evidence on which a reasonable fact-finder could decide in [her] favor."  *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256-57 (1986)).

### b.  The Bankruptcy Court Applied the Correct Legal Standards

The Trustee may not recover from Appellants if they took "for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided."  11 U.S.C. § 550(b)(1).  The Code does not define "knowledge" and there is a split of authority among the Circuits concerning the level of knowledge necessary to impute liability on the recipient of a voidable transfer.  *In re Bruno Mach. Corp.*, 435 B.R. 819, 849 (Bankr. N.D.N.Y. 2010) (collecting cases).

However, in an unpublished opinion, the Second Circuit discussed the applicable standard as follows:

> '[A] transferee does not act in good faith when he has sufficient knowledge to place him on inquiry notice of the debtor's possible insolvency.' . . . And, '[i]f a transferee possesses knowledge of facts that suggest a transfer may be fraudulent,' he has sufficient knowledge to preclude his incantation of § 550(b)'s defense.

*Banner v. Kassow*, 104 F.3d 352, 352 (2d Cir. 1996) (summary order) (quoting *Brown v. Third*

*Nat'l Bank (In re Sherman),* 67 F.3d 1348, 1355, 1357 (8th Cir. 1995)) (citing *Bonded Fin.*

*Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 897-98 (7th Cir. 1988)).  "Lower courts in this

Circuit have similarly held that inquiry notice of a debtor's possible insolvency suffices to impart

liability."  *In re Bruno Mach. Corp.*, 435 B.R. at 849 (collecting cases); *see also Enron Corp. v.*

*Bear, Stearns & Co.* (*In re Enron Corp.*), 01-16034 (AJG), 2005 WL 3832059, at *21 (Bankr.

S.D.N.Y. Nov. 28, 2005) ("Courts have applied an objective standard for good faith of a

transferee [under 550] similar to that applied under section 548(c) of the Bankruptcy Code . . .

[and] have found that the transferee does not act in good faith if the transferee had knowledge of

the debtor's unfavorable financial condition at the time of transfer" or "possible insolvency")

(citations and internal quotation marks omitted).  Moreover, "knowledge of voidability" does not

require "complete understanding of the facts and receipt of a lawyer's opinion that such a

transfer is voidable; some lesser knowledge will do."  *In re Bruno Mach. Corp.*, 435 B.R. at 849

(quoting *Bonded,* 838 F.2d at 898) (internal quotation marks omitted).  Finally, "knowledge, in

this context, requires knowledge of 'sufficient facts that (i) puts the transferee on notice that the

transfer might be avoidable or (ii) requires further inquiry into the situation and such inquiry is

likely to lead to the conclusion that the transfer might be avoidable.'"  *Id*. (quoting *In re CNB*

*Int'l, Inc.*, 393 B.R. 306, 330 (Bankr. W.D.N.Y. 2008).

 Appellants here contend that the bankruptcy court improperly held them, as mortgage

lenders, to a "higher standard of inquiry" than "ordinary prudence, which New York law actually

requires."  Appellants' Mem. 3, Doc. 9.  Appellants further assert that the law does not require

them to "conduct an in-depth inquiry into every facet of Thakur's business affairs or to be a

super sleuth."  *Id*. at 7.  As noted by the Trustee, Appellants fail to provide evidentiary support

for their complaint.  Moreover, the Court's independent review of the record reveals that there is

no basis for Appellants' claim. The bankruptcy court applied the correct legal standard, which is an objective standard of reasonableness. Hearing Tr. 26:1-7 ("[I]nquiry notice" is a "higher standard than constructive notice, but a lesser standard than actual knowledge, and should be done on an objective basis."); *see also id.* 23:1-2.

Appellants next contend that the Debtors' transfer of the Property to SJPB for no consideration was an "intra-family" transfer that was insufficient to put Roth on inquiry notice. Appellants' Mem. 12. As support for their argument, Appellants rely on *Miner v. Edwards*, 634 N.Y.S.2d 306 (4th Dep't 1995) and allege that "intra-family transfers, in and of themselves, are not the type of transactions to necessarily excite one's suspicions." *Id.* As discussed by the Trustee, *Miner* is highly distinguishable from the present situation. Trustee's Opp. Mem. 12. In *Miner*, the only fact that plaintiffs put in evidence to show that a mortgagee was on inquiry notice was a deed in the chain of title disclosing a gratuitous transfer from a mother to her two daughters. *Miner*, 634 N.Y.S.2d at 307. However, that deed was recorded five years before the daughters sold the property to an unrelated third party, who obtained the mortgage that was the subject of the avoidance action. *Id.* The court noted that "[e]vidence of a gratuitous transfer in the chain of title does not, without knowledge of fraud, render a conveyance fraudulent and voidable as against a purchaser or mortgagee for value." *Id.* (citations omitted). However, the court also noted that if the "facts within the knowledge of the purchaser are of such a nature, as, in reason, to put him upon inquiry, and to excite the suspicion of an ordinarily prudent person and he fails to make some investigation, he will be chargeable with that knowledge which a reasonable inquiry, as suggested by the facts, would have revealed." *Id.* (quoting *Anderson v. Blood*, 46 N.E. 493 (N.Y. 1897)) (internal quotation marks omitted). Ultimately, the court concluded that the transfer without consideration, classified as a gift from a mother to her

daughters, was insufficient to put an "ordinarily prudent person" on notice.  *Id*.

Here, in stark contrast, the Debtors transferred the Property to a corporate entity, SJPB, not to family members, the transfer occurred seven weeks prior to the closing of the mortgage, and Roth had indications, from the October 19 Call and the October 26 Email, that the Debtors were facing financial difficulties.  Trustee's Opp. Mem. 13.  Indeed, he was expressly told that the Debtors were in debt, had maxed out their credit cards and "needed some relief."  Roth Dep. 34:1-16.

### c.   The Bankruptcy Court Did Not Make Clearly Erroneous Factual Findings

Appellants allege that the bankruptcy court made various factual errors which undermined its legal analysis.  Appellants' Mem. 8.  First, Appellants argue that the court erred in characterizing SJPB as a "shell company."  Specifically, they state that the court "overlooked that SJPB remained an ongoing restaurant/deli business in 2007, which had just been renovated . . . Moreover, as an active business, it cannot be assumed that SJPB was simply a 'shell corporation.'"  *Id*.  As noted by the Trustee, it is immaterial whether SJPB was a shell corporation or not.  The import of SJPB was that Appellants knew that the Debtors had transferred the Property to SJPB, an entity which was wholly-owned by the Debtors.  Trustee's Opp. Mem. 19.

Furthermore, the Trustee contends that the transfer to SJPB, a wholly-owned entity, represents a "badge of fraud" pursuant to the New York Uniform Fraudulent Conveyance Act, N.Y. Debt. & Cred. Law, § 276 ("N.Y. DCL").  *Id*. (citing *In re Sharp Int'l Corp.*, 403 F.3d 43 (2d Cir. 2005)).  Pursuant to DCL § 276:  "Every conveyance made and every obligation incurred with actual intent*,* as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

N.Y. DCL § 276.  However, "[d]ue to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent."  *In re Sharp Intern. Corp.,* 403 F.3d at 56 (quoting *Wall St. Assocs. v. Brodsky,* 684 N.Y.S.2d 244, 247 (1st Dep't 1999)).  These "badges of fraud" include, among other things, "a close relationship between the parties to the alleged fraudulent transaction."  *Id.; see also HBE Leasing Corp. v. Frank,* 48 F.3d 623, 639 (2d Cir. 1995) ("Actual fraudulent intent . . . may be inferred from the circumstances surrounding the transaction, including the relationship among the parties and the secrecy, haste, or unusualness of the transaction.").

Appellants do not respond to the Trustee's badge of fraud argument.  However, the Court need not reach the issue of the badge of fraud as Appellants have failed to indicate how the bankruptcy court's reference to SJPB as a "shell company" constituted a clear factual error or how it affected the court's granting of summary judgment to the Trustee.  The Court notes that Judge Drain's grant of summary judgment would have been appropriate even without the finding that SJPB was a shell company.

Second, Appellants claim that the bankruptcy court erroneously found that the Debtors' transfer of the Property to SJPB had occurred contemporaneously with the Appellants' mortgage, and that Appellants had conditioned the loan on the Property transfer.   Appellants' Mem. 8; *see also* Appellants' Reply Mem. 2.  However, Judge Drain did not make a finding that the loan was conditioned upon the transfer.  To the contrary, the bankruptcy court explained that it is was "disputed whether [Appellants] through Roth insisted on there being a transfer to SJ[PB] first," however, it is "undisputed that at a minimum Mr. Roth was under the understanding that it had been very recently transferred to SJBP, which enabled the loan to be approved."  Hearing Tr.

23:22-25 – 24:1-6.

Third, Appellants argue that the bankruptcy court erred in finding that Appellants were "responsible" for deficiencies in the Title Report, and that any errors in the Title Report were "attributable to" Pradeep Thakur's "misleading" Affidavit of Title. Appellants' Mem. 8-9. However, as noted by the Trustee, there is nothing in the record to suggest that the court held Appellants "responsible" for any deficiency in the Title Report, Trustee's Opp. Mem. 20, nor have Appellants provided evidentiary support for their claim.

Finally, Appellants attempt to explain the various inconsistencies in the Affidavit of Title. Specifically, they allege that "by comparing" the Title Report with Pradeep Thakur's Affidavit of Title, "it is readily apparent that any errors regarding the identification of the respective deeds were a direct result of Mr. Thakur's lack of precision and not a cover-up." Appellants' Mem. 9. However, the bankruptcy court explained that it was not basing its ruling on the Affidavit of Title since it was not clear "either as a legal or a factual matter whether that is the type of document that would put someone like a lawyer in Mr. Roth's position on inquiry notice." Hearing Tr. 23:15-21. Accordingly, any errors in the Affidavit of Title are immaterial.

### d. Appellants Were Not Entitled to Rely on the Title Report and Loan Policy in Light of Information of the Debtors' Financial Difficulties

Finally, Appellants contend that they conducted a reasonable inquiry as to the validity of the mortgage by retaining Sky Abstract, a title closing company, to conduct judgment and lien searches and produce a Title Report and Loan Policy. Specifically, Appellants argue that the Title Report and Sky Abstract's searches were sufficient to satisfy their inquiry obligations "as a matter of law, or at the very least, raised issues of material fact for trial." Appellants' Mem. 3.

Roth represented that he relied on the Title Report and Loan Policy for the following reasons:

> The marked up title report and loan policy issued by Sky Abstract failed to raise as an exception to title, the transfer of the premises from the Thakurs to SJPB . . . . In fact to the contrary, the title company provided an *express omission* [by the handwritten notation stating 'omit'], which signified that that the title company independently analyzed the prior transfer and did not come away with an issue. Instead the word 'omit' meant that Sky Abstract was satisfied that the Thakur's transfer of the Premises to SJPB was not fraudulent.

Roth Decl. ¶ 28.  However, as noted by the Trustee, neither the Title Report nor the Loan Policy were designed to shed light on the Debtors' financial condition or whether SJPB had paid consideration for the Property.  Trustee's Opp. Mem. 13.  This is to say that Appellants, after learning of the Debtors' financial situation from the October 19 Call and October 26 Email, should have conducted additional investigation to ascertain the Debtors' financial situation and whether consideration had been given for the SJPB transfer.

Furthermore, Appellants' reliance on the Title Report and Loan Policy was unreasonable for several reasons.  First, the Loan Policy explicitly excludes coverage for fraudulent conveyances:

> *[E]xpressly excluded from coverage of this policy* [is] . . . any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage is . . . *a fraudulent conveyance or fraudulent transfer*.

T. Appx., Ex. 1, Tab E, p. 5 (emphasis supplied).  Accordingly, Appellants could not rely on the Loan Policy to satisfy the diligence that the Property transfer from the Debtors to SJPB was not a fraudulent conveyance because it specifically excludes fraudulent conveyance claims.  *See* Trustee's Opp. Mem. 14.

Second, contrary to Roth's claim, neither the Title Report nor the Loan Policy "omit[ted]" the 2007 transfer from the Debtors to SJPB.  *See* Trustee's Opp. Mem. 15.  Rather, the "omissions" discussed by Roth are the "omit[s]" in paragraphs 6 and 21 of the Title Report, which refer to the transfer of the Property from Pradeep, Savitri and Jennin Thakur to the

Debtors in 2000.  It *does not* refer to the transfer from Debtors to SJPB in 2007.  Therefore, there is no "express omission" that would indicate that the title company independently analyzed the transfer from the Debtors to SJPB.

Third, Appellants argue that the bankruptcy court erred in finding that Appellants had knowledge of the Debtors' financial distress based on the communications from McGeorge in the October 19 Call and the October 26 Email.  They argue that the McGeorge communications regarding the Debtors' financial issues, lawsuits and judgments were "inconsistent" with Sky Abstract's searches of the public record.  Accordingly, Appellants contend that "[a]s between Mr. McGeorge's email inquiry and the [Title Report], it cannot be concluded that Appellants were imprudent when they put their emphasis on the actual searches made by a third party abstract company."  Appellants' Mem. 8.  They argue that "Mr. McGeorge may have very well overstated the Thakurs' financial pressures at the time and his commentary did not conform to the more reliable information obtained from Sky Abstract," *id*. at 8, and "[i]n seeking out a loan, Mr. McGeorge matter-of-factly indicated that the Thakurs 'overspent on leasehold improvements' and were 'falling behind' without any sign of desperation."  Appellants' Reply Mem. 3.  These statements are conclusory and logically suspect.  Appellants do not explain why it was prudent to ignore the information provided by McGeorge that the Debtors were experiencing financial distress.  Accordingly, their arguments are insufficient to defeat a motion for summary judgment.

The Trustee also argues that Appellants were not entitled to rely *solely* on the Title Report in conducting their due diligence.  *See* Trustee's Opp. Mem. 15 (citing *Zev Cohen, LLC v. Fid. Nat. Title Ins. Co.*, 831 N.Y.S.2d 689 (N.Y. Sup. Ct. 2007)).  The court in *Zev Cohen* explained that "a title report is issued for the benefit of the title company, not necessarily for the

party who ordered the title search . . . To the extent that [a] plaintiff claims it relied on [a] title report . . . , its reliance, as a matter of law, is misplaced." *Zev Cohen, LLC*, 831 N.Y.S.2d at 694-95 (finding that a title insurer was not liable to a real property purchaser when the title report failed to disclose that the property was subject to an Article 7-A administrator and did not disclose an expired notice of pendency); *see also Citibank, N.A. v. Chicago Title Ins. Co.,* 632 N.Y.S.2d 779, 781 (1st  Dep't 1995) ("The contract of insurance is distinct and separate from the contract of searching . . . Under the contract for searching titles the defendant may be liable for any damages which its negligence may have imposed upon the plaintiff.  Under the contract of insurance no question of negligence in searching can arise.").  Regardless of the import of *Zev Cohen*, Appellants here fail to explain *why* they should have been entitled to rely on the Title Report and Loan Policy *in light of* McGeorge's communications to Roth that the Debtors were facing financial difficulties, including that they had been sued and were dealing with outstanding judgments, and that the Debtors' transfer of the Property was made to a wholly-owned entity at about the time of the Appellants' loan.

Relatedly, Appellants argue that they are entitled to the protection of New York Property Law Section 266, which provides that a bona fide purchaser or encumbrancer for value is protected in its title unless it had previous notice of the fraudulent intent of its immediate grantor.  Specifically, Appellants claim that under section 266, "the issuance of a title policy in favor of the lender constitutes prima facie evidence of the validity of a mortgage and there is no duty of further inquiry unless the mortgagee has actual knowledge of facts that 'excite [its] suspicion,'" Appellants' Mem. 3, and appear to rely on *Fleming-Jackson v. Fleming*, 838 N.Y.S.2d 506 (1st Dep't 2007) in support of their proposition.  *Id.* at 12.

*Fleming-Jackson* is highly distinguishable from Appellants' case.  In *Fleming-Jackson*,

23

plaintiffs claimed that a mortgagee should have known that the mortgagor was not authorized to encumber the property; however, they only offered the representation of their attorney that the mortgagee knew that the property was occupied by persons other than mortgagors. *Fleming-Jackson*, 838 N.Y.S.2d at 507. The court found that the attorney's representation was hearsay, and, in any event would not be knowledge requiring the mortgagee to make further inquiry. *Id.* Moreover, the court found that the "mortgagee made a prima facie showing that it was a bona fide encumbrancer by showing that a title search revealed that its mortgagors . . . were the record owners of the subject property and that there were no recorded contracts affecting their title." *Id.* As discussed by the Trustee, the court did not actually hold that a title policy was *prima facie* evidence of a mortgage's validity. Rather, the court held that the mortgagee was not on inquiry notice, and even if the mortgagee were on notice, based on the facts of the case, the mortgagee's review of the title search would have been sufficient. Trustee's Opp. Mem. 17. Here in contrast, the Appellants, through their lawyer, had sufficient indications that the Debtors were experiencing financial difficulties to deny them the good faith transferee protections of Bankruptcy Code section 550.

### III. Conclusion

For the reasons set forth above, the Order of the bankruptcy court granting the Trustee summary judgment is AFFIRMED. The Clerk of the Court is respectfully directed to docket this decision and close the case.

It is SO ORDERED.

Dated:      September 30, 2013
            New York, New York

Edgardo Ramos, U.S.D.J.

24